# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA

VICTORIA OFORIWAH TWUMASI
ANKRAH, on behalf of herself and
others similarly situated,

     Plaintiff,

v.

AMERICA FIRST MOVING
SERVICES, LLC

     Defendant.

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
/

Case No. 26-cv-666

## PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS

## **<u>INTRODUCTION</u>**

Defendant's Motion to Dismiss is an improper attempt to resolve disputed facts and affirmative defenses at the pleading stage under the guise of a jurisdictional challenge. Plaintiff alleges that Defendant placed unsolicited telemarketing calls and sent text messages to her despite her number being registered on the National Do Not Call Registry and despite her clear and repeated instructions to stop. These allegations establish a concrete injury sufficient to confer Article III standing.

Rather than accept those well-pleaded allegations, Defendant asks the Court to credit its own version of events—based on unverified third-party data—and to conclude that Plaintiff consented to the communications and that any subsequent conduct was legally reasonable. But consent is an affirmative defense that goes to the merits, not standing. And even if considered, Plaintiff has submitted sworn testimony directly disputing Defendant's account, creating a factual conflict that cannot be resolved on a motion to dismiss.

Defendant's remaining argument—that it acted within a "reasonable time" in honoring Plaintiff's do-not-call request—fails for similar reasons. The TCPA does not provide a safe harbor for continued telemarketing after revocation, and what constitutes a reasonable time is a fact-intensive inquiry inappropriate for resolution at this stage.

Because Plaintiff has plausibly alleged violations of the TCPA and Defendant's arguments rely on disputed facts and premature merits determinations, the Motion to Dismiss should be denied in its entirety.

## BACKGROUND

This action arises from Defendant's unsolicited telemarketing communications to Plaintiff in violation of the Telephone Consumer Protection Act ("TCPA"). Plaintiff brings this case on behalf of herself and a class of similarly situated individuals who received unlawful robocalls and telemarketing communications despite being registered on the National Do Not Call Registry.

Plaintiff is the sole user of her cellular telephone number, which she uses for personal purposes and has maintained on the National Do Not Call Registry since 2005. ECF No. 1 ¶¶ 20–23, 28. Despite her registration, Defendant initiated multiple telemarketing contacts to Plaintiff in December 2025, including text messages and prerecorded voicemail calls promoting Defendant's moving services. Id. ¶¶ 29–30, 34–35, 40.

On December 15, 2025, Plaintiff received an unsolicited text message from Defendant. Id. ¶ 30. She immediately responded "stop" in an effort to revoke any purported consent and halt further communications. Id. ¶ 31. Nevertheless, Defendant sent an additional text message, to which Plaintiff again replied "stop." Id. ¶ 33. Defendant then proceeded to place multiple telemarketing calls to Plaintiff

3

over the following days, leaving prerecorded voicemail messages on each occasion. Id. ¶¶ 34–39. These calls were identical in nature and content, reflecting the use of artificial or prerecorded voice technology. Id. ¶¶ 41–42.

Plaintiff did not request these communications, did not seek information from Defendant, and did not provide prior express consent to be contacted. Id. ¶¶ 45–48. As alleged in the Complaint, these communications were nonconsensual and constituted an invasion of Plaintiff's privacy, causing annoyance, disruption, and interference with the use of her phone. Id. ¶¶ 49–50.

In support of its Motion to Dismiss, Defendant now asserts—for the first time—that Plaintiff supposedly submitted her personal information through a third-party website and consented to receive the very communications at issue. That assertion is directly contradicted by Plaintiff's sworn declaration. *See* Exhibit 1. Plaintiff unequivocally states that she never visited the website identified by Defendant, never submitted any request for a moving quote, and never provided her personal information to Defendant or any affiliated website in December 2025. *Id.* ¶¶ 2–3. She further attests that she did not consent to receive calls or text messages, did not verify any phone number through a code, and did not authorize anyone else to submit her information on her behalf. *Id.* ¶¶ 8–9, 13, 15.

Plaintiff also confirms that she was not planning a move at the time of the alleged submission and that any information suggesting otherwise—such as a

move involving locations she has never lived in—is inaccurate and not attributable to her. *Id.* ¶¶ 4, 6–7. Consistent with these facts, Plaintiff maintains that any communications she received from Defendant were entirely unsolicited. *Id.* ¶ 16. Accordingly, the record before the Court presents a straightforward factual dispute: Defendant relies on unverified third-party data to claim consent, while Plaintiff provides sworn testimony denying any such interaction or authorization. At this stage, that dispute must be resolved in Plaintiff's favor, or at minimum, precludes dismissal.

## ARGUMENT

1. **The Plaintiff has Denied Providing her Consent to be Contacted, which is an Affirmative Defense, through an Affidavit. As such, the Defendant's Motion Fails.**

First, Defendant contends that Plaintiff lacks Article III standing because she consented to receive prerecorded calls from Defendant. Article III standing requires three elements: "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016). The first element, injury-in-fact, requires a plaintiff to show they have suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)). Plaintiff bears the burden of establishing standing. *See Salcedo v. Hanna*, 936 F.3d 1162, 1167 (11th Cir. 2019).

The Eleventh Circuit has recognized that phone calls made in violation of the TCPA constitute "a concrete injury that meets the minimum requirements of Article III standing." *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1270 (11th Cir. 2019); *see also Drazen v. Pinto*, 74 F.4th 1336, 1339 (11th Cir. 2023) (holding that plaintiffs who received a single text message in violation of the TCPA suffered a concrete injury in fact).

Nevertheless, Defendant argues that Plaintiff did not suffer an injury-in-fact because she consented to receive prerecorded phone calls from Defendant. However, prior express consent is an affirmative defense. *Murphy v. DCI Biologicals Orlando, LLC*, 797 F.3d 1302,1305 (11th Cir. 2015); *see also Manfred v. Bennett Law, PLLC*, No. 12-CV-61548, 2012 U.S. Dist. LEXIS 173935, 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012) ("Prior express consent is an affirmative defense, not an element of the claim."). And determining whether consent existed goes to the merits of Plaintiff's claim, not Article III standing. *See Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 990 (9th Cir. 2023) (holding that consent has no bearing on Article III standing); *see also Glasser v. Hilton Grand Vacations Co., LLC*, No. 8:16-CV-952-T-27AAS,

6

2017 U.S. Dist. LEXIS 381, 2017 WL 34823, at *2 (M.D. Fla. Jan. 3, 2017) ("[W]hether Plaintiff consented to the calls goes to the merits of her claim, not whether jurisdiction is proper."). Accordingly, because Plaintiff has sufficiently alleged a concrete injury, and the issue of consent is inappropriate to the standing analysis, the Court declines to dismiss Plaintiff's claims for lack of standing. Defendant also contends that Plaintiff lacks standing because any alleged injury is not "fairly traceable" to unlawful conduct. This argument improperly conflates the merits with jurisdiction. Plaintiff alleges that Defendant continued placing telemarketing calls after she expressly revoked consent and instructed Defendant to stop. ECF No. 1 ¶¶ 31–34. Those allegations, accepted as true, establish that Plaintiff's injury is directly traceable to Defendant's conduct. Whether Defendant ultimately complied with the TCPA or acted "reasonably" goes to liability—not standing—and cannot defeat jurisdiction at the pleading stage.

Furthermore, as discussed above, the Plaintiff has categorially denied providing her consent to receive the calls at issue. As such, Defendant's reliance on *Hall v. Xanadu Mktg., Inc.*, 682 F. Supp. 3d 1278 (N.D. Ga. 2023) is misplaced. In *Hall*, the court granted dismissal only after considering a factual attack supported by detailed and uncontroverted declaration evidence demonstrating that the plaintiff had affirmatively provided consent to receive the challenged communications. Critically, the plaintiff in *Hall* failed to submit any competing

7

evidence to rebut that showing, allowing the court to weigh the record and resolve the jurisdictional issue against her. Here, by contrast, Plaintiff has submitted a sworn declaration unequivocally denying that she visited the alleged website, submitted her information, or consented to receive any communications from Defendant or any third party. This direct evidentiary conflict distinguishes *Hall* and precludes dismissal at this stage.

2. **Whether Defendant Honored Plaintiff's Do-Not-Call Request Within a "Reasonable Time" Presents a Fact Question That Cannot Be Resolved on a Motion to Dismiss.**

Defendant next argues that even if Plaintiff did not consent to the communications at issue, dismissal is warranted because Defendant allegedly honored Plaintiff's revocation request within a "reasonable time." This argument fares no better. The governing regulation does not create a safe harbor permitting continued telemarketing within a fixed period following a do-not-call request. Rather, it imposes a reasonableness standard that is inherently fact-dependent. Whether Defendant's delay in honoring that request was "reasonable" under the circumstances is a question of fact that cannot be resolved on a motion to dismiss.

As alleged in the Complaint, Plaintiff received an unsolicited telemarketing text message from Defendant on December 15, 2025. ECF No. 1 ¶ 30. Plaintiff immediately responded "stop," thereby revoking any purported consent and making a do-not-call request. *Id.* ¶ 31. Defendant nevertheless sent an additional

8

text message, to which Plaintiff again responded "stop." *Id.* ¶ 33.

Despite Plaintiff's repeated opt-out requests, Defendant continued contacting her by placing multiple telemarketing calls over the following days. *Id.* ¶ 34. Between December 15 and December 18, 2025, Defendant called Plaintiff at least five times and left prerecorded voicemail messages advertising its services. *Id.* ¶¶ 34–39. These communications were not isolated or accidental; rather, they were repeated and identical in nature, reflecting the use of prerecorded messaging technology. *Id.* ¶¶ 41–42.

Plaintiff alleges that these calls occurred after she had clearly and unequivocally instructed Defendant to cease communications. *Id.* ¶¶ 31, 33–34. As a result, Defendant continued to intrude upon Plaintiff's privacy and disrupt her use of her telephone even after receiving her do-not-call request. *Id.* ¶¶ 49–50. These factual allegations, accepted as true, establish that Defendant did not immediately honor Plaintiff's revocation and instead continued telemarketing communications for several days thereafter.

Section 64.1200(d) plainly states that companies like Defendant must promptly record do-not-call requests when made and to honor those requests within a reasonable time thereafter:

> If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the

subscriber's name, if provided, and telephone number on the do-not-call list ***at the time the request is made***. Persons or entities making such calls (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request ***within a reasonable time from the date such request is made***. This period may not exceed ten (10) business days from the receipt of such request.

(emphasis added). Defendant argues that Section 64.1200(d)(3) establishes the reasonableness of a call less than 10 business days after a do-not-call request, but a plain reading of this Section establishes only the converse, that is, the unreasonableness of a call more than 10 business days after the request. Thus, what constitutes a "reasonable time" is a question of fact, because the regulation does not state that any shorter time is per se reasonable.

The majority view follows this plain reading of the regulation and holds that there is no safe harbor; instead, whether a defendant acted within a "reasonable time" is a question of fact that must be answered by a jury. *See Gill v. Align Tech. Inc.*, No. 21-CV-631-JPS, 2022 U.S. Dist. LEXIS 87464, at *8 (E.D. Wis. May 16, 2022) ("the Reasonableness of Align's Efforts to Honor the Do Not Call Request is a Question for the Jury"); *Delgado v. Emortgage Funding, LLC*, No. 21-CV-11401, 2021 U.S. Dist. LEXIS 196785, at *12-13 (E.D. Mich. Oct. 13, 2021) ("Although § 64.1200(d)(3) states that a thirty-day delay in honoring do not call requests is per se unreasonable, it does not state that any shorter delay is per se reasonable."); *Boger v. Citrix Sys.*, Civil Action No. 8:19-cv-01234-PX, 2020 U.S. Dist. LEXIS 36517, at *14 (D. Md. Mar. 3, 2020) ("The provision does not, as Citrix suggests, create a

10

safe harbor for follow up calls placed within thirty days after the first call. More to the point, whether Citrix put Boger on the Do-Not-Call list within a 'reasonable time' is a question of fact best left for development in discovery."); *Nece v. Quicken Loans, Inc.*, No. 8:16-CV-2605-T-23CPT, 2018 U.S. Dist. LEXIS 42356, 2018 WL 1326885, at \*7 (M.D. Fla. Mar. 15, 2018) ("a jury must decide whether Quicken honored Nece's do-not-call request in a reasonable time."); *Buja v. Novation Cap., Ltd. Liab. Co.*, No. 15-81002-CIV-MARRA, 2017 U.S. Dist. LEXIS 231500, at \*18-19 (S.D. Fla. Mar. 30, 2017) (declining to decide as a matter of law that two or three weeks for a telemarketer to honor a plaintiff's DNC request was a reasonable amount of time); *Martin v. Comcast Corp.*, No. 12 C 6421, 2013 U.S. Dist. LEXIS 169221, 2013 WL 6229934, at \*6 (N.D. Ill. Nov. 26, 2013) (declining to decide as a matter of law that one or two weeks for a telemarketer to honor a plaintiff's DNC request was a reasonable amount of time).

As the *Gill* court observed, reasonableness is a jury question because "if [a defendant's] system was such that it could easily and immediately remove a person from a call list, then perhaps a jury would find that it was unreasonable to call that person within an hour of their do-not-call request. In any case, it is an issue for the fact-finding stage of this matter." *Gill*, 2022 U.S. Dist. LEXIS 87464, at \*10. This is precisely the issue here.

11

Judge Cohen, who the Defendant relies upon for a separate proposition, made this clear in *Lourie v. Papa John's Int'l, Inc.,* 2024 U.S. Dist. LEXIS 119679, *7-8 (N.D. Ga. 2024);

> A plain reading of [*8]  47 C.F.R. § 64.1200(d)(3) makes clear that the regulation does not establish a period within which compliance is reasonable as a matter of law, as Defendant interprets the regulation, but instead establishes a period outside of which compliance is unreasonable as a matter of law. See Nece v. Quicken Loans, Inc., 292 F. Supp. 3d 1274, 1282 n.7 (M.D. Fla. 2018)… Martin v. Comcast Corp., No. 12-C-6421, 2013 U.S. Dist. LEXIS 169221, 2013 WL 6229934, at *6 (N.D. Ill. Nov. 26, 2013) (denying a motion to dismiss based on the inability to decide as a matter of law that [*11]  one or two weeks for a telemarketer to honor a plaintiff's do-not-call request was a reasonable amount of time as a matter of law).

This Court should reach the same conclusion.

Second, the FCC has since revised §64.1200(d)(3). The rule now separately requires that a caller "record the request and place the subscriber's name . . . on the do-not-call list at the time the request is made," and it reduces the outer bound from 30 days to ten (10) business days. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, 40 FCC Rcd. 2395 (F.C.C. Apr. 7, 2025). That amendment makes immediate recording and prompt processing central to the reasonableness inquiry in a way the prior text did not. The Commission expressly paired that immediate-recording requirement with a shortened outer limit of ten business days in recognition that technological advances make prompt processing readily achievable, and because consumers are "understandably frustrated" when they continue to receive calls or texts "days or even weeks" after

making a stop request. *See* FCC Report & Order ¶¶ 19–21. Specifically, the Commission explained that consumers "are understandably frustrated when they receive robocalls and robotext messages days or even weeks following a request to stop such communications," and that technological advances "provide callers and senders of text messages with the tools they need to process all do-not-call and consent-revocation requests quickly, and certainly within 10 business days." *Id.* at ¶¶ 20–21. Thus, a defendant's *actual* ability to log and suppress STOP replies — and whether the defendant *did* in fact log those replies — is squarely probative of whether any delay was reasonable.

In sum, this Court should adopt the majority view on this issue. Section 64.1200(d) does not create a safe harbor period allowing telemarketers like Defendant to continue to harass consumers after a stop request for 10 days. At most, the regulation sets an outer limit on what is unreasonable—not a conclusive benchmark for reasonableness—and thus does not render calls or texts within that period per se lawful. Defendant was still required to act reasonably under the circumstances, which it failed to do here.

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. Plaintiff has adequately alleged that Defendant placed unsolicited telemarketing calls and sent text messages in violation of the TCPA, resulting in a concrete injury

sufficient to establish Article III standing. Defendant's arguments improperly rely on disputed factual assertions and affirmative defenses that cannot be resolved at the pleading stage. At a minimum, the parties' competing evidence creates factual disputes that preclude dismissal under Rule 12(b)(1). Accordingly, Defendant's Motion to Dismiss should be denied in full.

Dated: April 25, 2026

/s/ Anthony I. Paronich
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

Counsel for Plaintiff and the proposed class