**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

VICTORIA OFORIWAH TWUMASI ANKRAH, on behalf of herself and others Similarly situated,

         Plaintiff,

v.

AMERICA FIRST MOVING SERVICES, LLC

         Defendant.

)
)
)
)
)
)
)
) No. 1:26-cv-00666-TWT
)
)
)
)
)
)

## SECOND DECLARATION OF MICHEL GERAUD IN SUPPORT OF DEFENDANT'S REPLY

Pursuant to 28 U.S.C. § 1746, the undersigned hereby declares as follows:

1.      I am the Manager of Defendant America First Moving Services, LLC ("America First"). I am over the age of eighteen and of sound mind, and I am fully competent to make this Declaration. The matters set forth in in this Declaration are based upon my personal knowledge, including knowledge based upon corporate records and data withing my custody and control and the knowledge gained from reviewing the corporate records of America First and its affiliate partners, which are maintained in the ordinary course of business.  If called as a witness, I could and would testify competently to the facts stated herein.

1

2.      I submit this declaration in support of Defendant's Reply in further support of its Rule 12(b)(1) Motion to Dismiss. This declaration responds to factual assertions raised in Plaintiff's declaration submitted in opposition to Defendant's motion.

3.      The records referenced in this declaration are maintained in the ordinary course of business by America First and/or its affiliate partners in connection with lead generation, consumer verification, consumer communications, and opt-out processing. These records are generated contemporaneously with the underlying consumer activity and are relied upon by America First in the ordinary course of its operations.

### Additional Lead-Submission and Session Tracking Records

4.      In paragraph 14 of her declaration, Plaintiff asserts that Defendant has not produced evidence tying her personally to the online submission at issue, including IP address information, device information, or location data.

5.      In response to Plaintiff's declaration, I reviewed additional affiliate lead-submission and session-tracking records associated with the December 15, 2025, inquiry identified in my prior declaration.

6.      Attached as **Exhibits A, B, and C**, as described in further detail below, are true and correct redacted excerpts of the affiliate lead-submission and session-

2

tracking records associated with the December 15, 2025 inquiry, including the associated browser, device, timestamp, IP address, and geolocation information.

7.     Those records reflect that the inquiry was submitted through the affiliate landing page located at https://quote.vanlinesmove.com/Moving_Company/ and included the submission of the name "Victoria TwumasiAnkrah," email address ███████████████████ and telephone number ending in -7225. True and accurate copies of those business records are attached here as **Exhibit A** and excerpted as follows:

```
landing_page_url" : "https://quote.vanlinesmove.com/Moving_Company/",
  "state_click" : "2",
  "moving_size" : "0",
  "from_state" : "CA",
  "from_city" : "los angeles",
  "from_zip" : "90001",
  "from_areacode" : "323",
  "move_date" : "2026-02-26",
  "to_state" : "GA",
  "to_city" : "atlanta",
  "to_areacode" : "404",
  "to_zip" : "30301",
  "email" : ██████████████,
  "last_name" : "TwumasiAnkrah",
  "first_name" : "Victoria",
  "code" : "934",
  "phone" : █████7225",
  "verifyvia" : "sms",
  "is_verify" : "1",
```

8.      The associated session-tracking records further reflect that the inquiry was submitted through a mobile-device browser session ("Device": "m") using the Safari web browser ("browser": "Safari",) and was associated with Google advertising referral data and a Google click-tracking identifier ("gclid") generated contemporaneously with the submission process. True and accurate copies of those business records are attached here as **Exhibit B** and excerpted as follows:

```
Utm data :
{
  "_id" : 4440462,
  "u_traffic" : "goog",
  "u_site" : "VM",
  "u_camp" : "TopMoving",
  "ad_id" : "422088639319",
  "adgroup" : "97169897477",
  "device" : "m",
  "ipaddress" : "2a04:4e41:3eb5:20bc::acb5:20bc, 104.22.1.89",
  "gclid" : "Cj0KCQiAgP_JBhD-ARIsANpEMxwPJmxRIO5Y36SQai8ygeRw_6DVq_kcQulOqvFJSjxvMUHLCqpMs1saAqwhEALw_wcB",
  "gclid_type" : 0,
  "session" : "202512158490",
  "adgroup_id" : "398274398472",
  "ar_ad" : null,
  "ar_adgroup" : null,
  "ar_campaign" : null,
  "ar_channel" : null,
  "ar_clx" : null,
  "ar_strategy" : null,
  "campaign_id" : "9501102950",
  "browser" : "Safari",
  "__v" : 0,
  "landing_page_url" : "https://quote.vanlinesmove.com/Moving_Company/",
  "created_at" : ISODate("2025-12-15T08:49:01.412Z")
}
```

9.      The records also include a unique session identifier, timestamp information, and IP address data associated with the submission and SMS verification activity.

10.     Specifically, the associated tracking records reflect IP address information "2a04:4e41:3eb5:20bc::acb5:20bc, 104.22.1.89" and a session creation

timestamp of December 15, 2025 at 08:49:01 UTC that reflects when the web inquiry was submitted.

11.    Based upon my review of the associated tracking records and publicly available IP geolocation information, the submission and SMS verification activity was associated with IP address information reflecting geolocation data corresponding to the greater Atlanta, Georgia metropolitan area. True and accurate copies of this IP geolocation data is attached here as **Exhibit C** and excerpted as follows:



12.    The geolocation information reflected in Exhibit C is generally consistent with Plaintiff's declaration stating that she was physically present in Georgia on December 15, 2025.

**Additional Records Regarding SMS Verification**

13.    Plaintiff states in paragraphs 9 and 13 of her declaration that she did not receive or enter any SMS verification code.

14.    As explained in my prior declaration, the affiliate verification system required a user to verify control of the submitted telephone number through a one-time SMS verification process before a lead could be marked verified and released for marketing contact.

15.    The first step in the process is for an interested customer to enter their phone number into the marketing website's lead funnel, as shown in **Exhibit D** which is attached to this declaration and excerpted here:



16.    In reviewing the additional affiliate records associated with this matter, I confirmed that the affiliate system transmitted verification code "934" to the

telephone number ending in -7225 and that the same verification code "934" was thereafter entered into the affiliate website verification field, resulting in a verified status ("is_verify = 1") associated with that number. These transactions are all shown in Exhibit A.

17.    A copy of the webpage the Plaintiff visited and entered her verification code of "934" is attached here as **Exhibit E** and excerpted here:



18.    Based upon the design and operation of the verification system, the verification process could not be completed unless the user had access to and control over the telephone number ending in -7225 at the time the verification code was transmitted and entered.

**Additional Facts Regarding Opt-Out Processing and Internal Do Not Call Records**

19.    Plaintiff alleges that the communications at issue were unsolicited and continued after revocation.

20.    America First maintains internal procedures, employee training, and technical systems designed to process and honor consumer opt-out requests, including SMS "STOP" responses, and to maintain internal Do Not Call ("DNC") suppression records associated with consumer telephone numbers.

21.    Under America First's and its affiliate's standard procedures, when a consumer sends an SMS reply containing "STOP," the system automatically: (a) generates an opt-out confirmation message; and (b) suppresses the number within the messaging platform.

22.    When America First receives a customer request to be opted out of marketing contact, a trained member of the America First team adds the customer name to the internal Do Not Call ("DNC") list, which updates America First's internal DNC records associated with that number.

23.    Records maintained by America First reflect that Plaintiff's number sent two "STOP" responses on December 15, 2025. In accordance with company policy and training, Plaintiff's number was placed on America First's internal DNC list that same day.

24.    Following the December 15, 2025, opt-out requests, no additional text messages were sent to Plaintiff's number by America First.

25.    A review of the relevant America First and affiliate business records reflects that the same telephone number ending in -7225 both completed the SMS verification process associated with the December 15, 2025 inquiry and later transmitted the "STOP" responses reflected in the message logs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on the 11th of May, 2026, at Deerfield Beach, Florida.

_____

Michel Geraud